UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHNNIE M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00066-MJD-JMS |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Johnnie M. applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on July 24, 2014, alleging an onset date of July 10, 2014. [Filing No. 9-2 at 21.] His applications were initially denied on March 27, 2015, [Filing No. 9-4 at 2; Filing No. 9-4 at 6], and upon reconsideration on July 31, 2015, [Filing No. 9-4 at 16; Filing No. 9-4 at 23]. Administrative Law Judge Robert Long (the "ALJ") held a hearing on May 8, 2017. [Filing No. 9-2 at 43-81.] The ALJ issued a decision on July 5, 2017, concluding that Johnnie M. was not entitled to receive DIB or SSI. [Filing No. 9-2 at 18.] The Appeals Council denied review on November 15, 2017. [Filing No. 9-2 at 7.] On February 12, 2018, Johnnie M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g).[2] [Filing No. 1.]

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Johnnie M. requested an extension with the SSA to file this action, [Filing No. 9-2 at 5], which was granted, allowing him to file through February 12, 2018, [Filing No. 9-2 at 2].

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[3]

"If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

---

[3] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

## II.
### BACKGROUND

Johnnie M. was 38 years of age at the time he applied for DIB and/or SSI. [Filing No. 9-5 at 2.] He completed a high school education and was previously self-employed doing lawn care and snow removal. [Filing No. 9-6 at 19.][4]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Johnnie M. was not disabled. [Filing No. 9-2 at 34.] Specifically, the ALJ found as follows:

- At Step One, Johnnie M. had not engaged in substantial gainful activity[5] since July 10, 2014, the alleged onset date. [Filing No. 9-2 at 23.]

- At Step Two, he had the following severe impairments: "ischemic heart disease with normal left ventricular systolic functioning, herniated disc at L5-Sl, cervical radiculopathy, lumbosacral spondylosis without myelopathy, rheumatoid arthritis, sciatica, obesity, major depressive disorder, panic disorder, and generalized anxiety disorder." [Filing No. 9-2 at 23 (internal citations omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 24.]

- After Step Three but before Step Four, he had the RFC "to lift and carry up to 10 pounds occasionally, lesser weights more frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. He must never climb ladders[,] ropes or scaffolds, or crawl, but can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant is capable of tolerating only occasional exposure to extremes of heat or cold, humidity, vibration, [or] pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. From a mental perspective, the claimant can understand, remember, and carry out simple instructions, and can respond appropriately to brief supervision and interactions with coworkers. He is able to deal with changes in a routine work setting. The claimant must be allowed the occasional use [of] a cane for ambulation. From a dexterity standpoint, he can frequently but not constantly reach in all directions bilaterally, and frequently but not constantly handle objects

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

bilaterally. The claimant is to perform no overhead reaching, and must avoid all work around hazards such as unprotected heights and moving machinery. He is also not to perform the operation of any motor vehicle as an aspect of work. From a social standpoint, the claimant must avoid all interaction with the public, and is limited to only occasional interaction with coworkers and supervisors." [Filing No. 9-2 at 27 (internal citations omitted).]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Johnnie M.'s RFC, he was incapable of performing his past relevant work as a groundskeeper. [Filing No. 9-2 at 32.]

- At Step Five, relying on VE testimony and considering Johnnie M.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision. [Filing No. 9-2 at 33.]

## III.
### DISCUSSION

Johnnie M. makes four assertions that the ALJ erred in (1) evaluating his subjective symptoms, (2) weighing the opinion evidence, (3) evaluating his physical RFC, and (4) assessing his mental RFC without utilizing the special technique. The Court will consider the arguments as necessary to resolve the appeal, beginning with the last assignment of error.

**A. Mental Impairments**

The ALJ failed to document use of the special technique described in the regulations used to evaluate a claimant's mental impairments. "Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). "We must then rate the degree of functional limitation resulting from the impairment(s). . . ." 20 C.F.R. § 404.1520a(b)(2). "When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and

extreme." 20 C.F.R. § 404.1520a(c)(4). The regulations make clear that the ALJ must document use of the technique:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4). The ALJ's failure to document use of the special technique was error.

The Court does not find harmless error appropriate in this case. "Under some circumstances, the failure to explicitly use the special technique may indeed be harmless error." *Craft*, 539 F.3d at 675. For example, in *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013), the Seventh Circuit excused failure to utilize the technique based on an adequate discussion of the required findings at Step Two, as well as in evaluation of the claimant's RFC:

> [The ALJ] did not, however, integrate the requisite point scales into his decision or explicitly refer to the functional areas. Nonetheless, we believe the ALJ provided enough information to support the "not severe" finding. The ALJ cited the absence of psychiatric or mental medical treatment prior to the date last insured, Pepper's good response to medication, and the aggravation of her condition by her responsibilities at home. The record medical evidence supports these assertions.

However, as in *Craft*, the Court "cannot conclude that it was harmless here because the ALJ's failure to consider the functional impairments during the special technique analysis was compounded by a failure of analysis during the mental RFC determination, as we will discuss further." *Craft*, 539 F.3d at 675. The ALJ's analysis of Johnnie M.'s mental impairments included significant omissions.

The ALJ completely ignored any evidence of cognitive problems. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the

record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). For example, the ALJ summarized a mental health assessment with a treating clinical psychologist, Julia Kocal, Psy.D., including that "[i]n spite of being especially emotional at this mental health assessment, the claimant's speech was completely normal." [Filing No. 9-2 at 31.] However, Dr. Kocal went on to observe under other significant findings, that Johnnie M. "also has periods of pressured speech, flight of ideas, [and] racing thoughts. He became circumstantial with more rapid speech as the interview continued." [Filing No. 9-8 at 69.] Under diagnostic impressions, Dr. Kocal concluded that "[t]he patient, per his disability interview, is impaired both cognitively as well as impaired for [activities of daily living]." *Id.*

The ALJ did not even mention a consultative examination supportive of cognitive impairments. On July 22, 2015, Alan H. Wax, Ph.D., performed a consultative psychological evaluation at the request of the SSA. [Filing No. 9-10 at 2.] "The examiner noted what appeared to be poor cognitive functioning." [Filing No. 9-10 at 3 (Johnnie M. was unable to answer easy questions, despite being cooperative, and was unable to even remember he had presented and repeated three items five minutes earlier.).] Dr. Wax concluded with a medical source statement that he "suspects there may be low cognitive functioning. The claimant has difficulty doing basic self-care and he performs few higher-level activities. If granted benefits, the claimant may need

7

assistance to manage funds at this time." [Filing No. 9-10 at 4.] Dr. Wax's diagnosis was "Major Depressive Disorder, Recurrent, Severe." [Filing No. 9-10 at 5.]

Johnnie M. testified that his cognitive issues were the result of his depression and brain damage caused by a lack of adequate oxygen supply resulting from his obstructive sleep apnea. [Filing No. 9-2 at 60-61.] However, the ALJ's decision provided no discussion of the apparent cognitive problems demonstrated on multiple exams by different providers, including an independent examiner. Furthermore, the ALJ's discussion of Johnnie M.'s sleep apnea was limited to acknowledgment that there is evidence supporting he has the medically determinable impairment and that its ninety percent correctable with a CPAP machine. [Filing No. 9-2 at 29.] There was no analysis of the potential functional effect of the impairment, nor an explanation of how the ALJ concluded the medically determinable impairment was not a severe impairment.

The ALJ also did not mention that Johnnie M. was hospitalized, inpatient in an Acute Care Unit from December 8, 2016 through December 13, 2016. [Filing No. 9-19 at 2-20.] The ALJ discussed the event that led to the admission, but at no point demonstrates he was even aware there was an admission:

> He eventually began outpatient counseling, and according to therapy records from Four County Counseling from December 2016, the claimant reported that he wanted attention from his wife, so he told her that he took five or six pills and that he may not wake up. On return to the office after this suicide threat, the claimant presented as depressed, with positive signs of loss of concentration, increased appetite, decreased pleasure, guilt because he lost his house, and feeling worthless.

[Filing No. 9-2 at 31.] The need for an impatient admission because of depression is a salient fact that was not confronted by the ALJ. The ALJ's summary of the medical evidence is particularly misleading because the ALJ highlighted a statement before the event in December 2016 that "the claimant admitted that he was in fact not suicidal whatsoever, and had never been hospitalized for any type of mental health problem, let alone a suicide attempt." [Filing No. 9-2 at 31.] While that

8

may have been accurate at one point in the record, the ALJ should not have neglected to mention that the complete record contradicted that summary.

Furthermore, the Court does not find the ALJ's endorsement of the state agency consultant psychologists' opinions to excuse the ALJ's errors in evaluating the mental health evidence. The Commissioner argues that the "ALJ's analysis and endorsement of the state agency doctors' opinion make clear that he determined that Plaintiff's activities of daily living were mildly impaired, while his social functioning and ability to maintain concentration, persistence, and pace were moderately limited." [Filing No. 19 at 22.] The ALJ gave "moderate weight" to the state agency physical opinions and went on to explain that "[s]imilarly, State psychologists reduced the claimant to simple, unskilled work with social restrictions, also consistent with the residual functional capacity and given similar weight." [Filing No. 9-2 at 32.] However, the latest state agency review was completed on July 31, 2015. [Filing No. 9-3 at 59.] That assessment was made without the benefit of the updated record, including the notable impatient admission for depression. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018).

Moreover, the ALJ's discussion of the medical evidence following the last state agency review underscores the need for expert assistance interpreting medical signs. "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). In the opinion of the Court, the ALJ was too eager to attach significance to statements made by Johnnie M. that downplayed the act that the ALJ labelled as merely a suicide threat, without any appreciation of why he may have been reluctant to be completely forthcoming about his motivations. Likewise, as an example, the

9

ALJ noted that "[n]ear the end of 2016, counseling records record the claimant's reports that he had been getting into arguments with his wife just because he was mad." [Filing No. 9-2 at 31.] The record demonstrates that Johnnie M. was counseled about the relationship between anger and depression. [Filing No. 9-19 at 11.] The ALJ gave no obvious consideration to the possibility that Johnnie M.'s anger could have been a manifestation of his mental impairments. An ALJ should avoid playing doctor by reaching lay conclusions about the consistency of a claimant's actions with their mental diagnosis and its functional effects. *See, e.g., Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (The Seventh Circuit remanded because the ALJ concluded that efforts to operate a small business were inconsistent with a diagnosis and limitations of major depressive disorder.)

Accordingly, the Court finds that further consideration of Johnnie M.'s mental functioning is necessary. On remand, the ALJ should utilize the special technique to evaluate Johnnie M.'s mental impairments and provide a sufficient explanation of the relevant medical evidence and considerations necessary to allow meaningful review of his material conclusions. The evaluation should consider the evidence both favorable and unfavorable.

**B. Subjective Symptom Evaluation**

The Court having found remand necessary based on the analysis of the issue above, declines to fully analyze the remaining argument raised by Johnnie M. While the parties argue about whether radiofrequency ablation procedures that Johnnie M. received for management of his back pain are properly considered as conservative treatment, [Filing No. 19 at 19; Filing No. 20 at 7], the Court need not decide that issue to conclude that further evaluation of Johnnie M.'s back pain is also necessary on remand. "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to

do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). The ALJ's written decision does not indicate in any way that these procedures were performed. The ALJ's summary noted that "[c]onservative treatment continued with little mention of altered treatment options or aggressive intervention." [Filing No. 9-2 at 30.] The ALJ then noted that Johnnie M. was "treated on oral medications only." [Filing No. 9-2 at 30.] Johnnie M. presents evidence of numerous injections and procedures that conflict with the ALJ's characterization of the treatment that Johnnie M. received. [Filing No. 17 at 5-7.] Further consideration of the evidence both favorable and unfavorable is necessary to ensure a fair assessment of Johnnie M.'s subjective symptoms, including his back pain. The ALJ should reconsider the opinion evidence and Johnnie's M.'s RFC based on his physical and mental impairments in the context of a more thorough analysis of the evidence of record. As such, Johnnie M.'s remaining arguments are rendered moot.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Johnnie M.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

SO ORDERED.

Dated: 11 FEB 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov